Patricio GALVAN, et al., Plaintiffs,

and

Leandro L. Gonzales, Plaintiff-Appellee,

v.

BEXAR COUNTY, TX., et al.,
Defendants,

and

Rudy Garza and Joe Neaves,
Defendants-Appellants.

No. 85–2212.

United States Court of Appeals,
Fifth Circuit.

April 2, 1986.

Rehearing Denied May 2, 1986.
Rehearing and Rehearing En Banc
Denied May 12, 1986.

Before BROWN, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is on appeal to review the district court's findings that Leandro Gonzales, a Bexar County jail guard, was discriminated against on the basis of age by officials in the Bexar County Sheriff's office, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA). Because we find that the equities in this case rendered Gonzales's failure to fully comply with the administrative filing requirements of the ADEA excusable, and that the district court properly interpreted the applicable law and was not clearly erroneous in its findings of facts, we affirm.

**I**

**A.**

Several pertinent facts in this case are hotly disputed between the parties. Here, as always, however, we are required to accept the district court's findings of fact unless these findings are clearly erroneous. *See* Fed.R.Civ.P. 52(a). The Supreme Court has stated that the "clearly erroneous" standard

> does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence the fact-finder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). In the instant case, the

William R. Crow, Asst. Crim. Dist. Atty., Civil Sect., San Antonio, Tex., for defendants-appellants.

Louis T. Rosenberg, Donald E. Barnhill, Alex Coy, III, San Antonio, Tex., for plaintiff-appellee.

district court made the following findings of fact.

In early 1977, the Texas Commission on Law Enforcement Standards and Education (TCLEOSE), an agency of the State of Texas, promulgated and adopted Rule 210.01.-02.009(b)(4), 37 Tex.Admin.Code § 211.82, (Rule) which required county jailers to be certified by TCLEOSE by January 1, 1979. One requirement for certification was that jailers be high school graduates or possess General Education Development Test (GED) certificates. As originally adopted, the Rule did not include a "grandfather clause" exempting currently employed jailers from its requirements.

Leandro Gonzales, the appellee, was hired by Bexar County as a detention guard in 1968. Gonzales, who attended school through the first two grades, was not a high school graduate and did not possess a GED certificate. Although the Sheriff of Bexar County had notice of the new TCLEOSE requirements as early as January of 1978, Gonzales was not notified of the need for a GED certificate until the certification date had passed. On January 26, 1979, Gonzales was told that if he did not obtain the GED certificate within thirty days, his employment with Bexar County would be terminated. In an attempt to comply with the requirement, Gonzales attended school for three weeks. Believing that he would be unable to obtain the GED certificate because of his age, Gonzales, on March 1, 1979, wrote his employer a letter stating that he was resigning as a Bexar County employee because:

> I find myself incapable of passing the required courses in getting my *"GED"* diploma. I have attended all my classes thus far but at my age 67 it is difficult for me to remember everything in just a couple of months.
>
> Yet I Leandro Gonzales Sr. feel that I have always meet the qualification [ ] in performing my assign duties as a Bexar County Employee.
>
> But as you can see all that is standing between me and my job now is a piece of paper stating, I have a high school diploma or GED.

Gonzales' resignation became effective on March 7, 1979.

In August of 1979, the Texas legislature enacted a "grandfather clause" to the Rule, exempting from the education requirement any "person who was employed or whose services were utilized in the operation of a County Jail on August 29, 1977." Tex.Rev.Civ.Stat.Ann. art. 5115.1 § 14(c). The legislature subsequently enacted a second grandfather clause, exempting the jailers and guards "serving under permanent appointment before September 1, 1979, from the educational requirement. Those jailers and guards have satisfied the requirements of this section by their experience." Tex.Rev.Civ.Stat.Ann. art. 4413 (29aa) § 7B(a) (Vernon Supp.1982–1983). This second grandfather clause provided, however, that any individual who "attempted to prove compliance with [the educational] standards [by submitting] a forged document" could not take advantage of the grandfather clause. *Id.* at § 7B(b)(2).

Gonzales became aware of the grandfather clause in August 1979 and requested that the then Sheriff of Bexar County, Rudy Garza, reinstate him. Even though Gonzales satisfied the requirements delineated by the Texas legislature in both grandfather clauses, Garza refused to reinstate Gonzales, the district court found, because of his age. At that time, Gonzales was sixty-seven.

On September 26, 1979, Gonzales filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in San Antonio. Gonzales told the EEOC intake officer of the circumstances of his employment resignation: the job he performed, his age, his level of education, his attempt to study for the GED, that at his age he could not study fast enough to pass the new requirements for a GED, that he resigned because he was going to be fired, and that his request for reinstatement under the grandfather clause was refused by Sheriff Garza because Garza considered Gonzales too old.

The intake officer gave Gonzales an EEOC form 283, a preliminary charge form, so that Gonzales could specify the type of discrimination. In 1979, the EEOC had just assumed responsibility for age discrimination complaints filed under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (ADEA). Thus, the EEOC form 283, which contained blocks referring to race, sex, religion and national origin, contained no space to indicate age discrimination. Gonzales therefore checked the box stating "other," to apprise the EEOC that his charge did not fall within any of the standard categories of discrimination listed on the form. Nonetheless, when an EEOC employee completed the formal "Charge of Discrimination" form 5A, the basis given for Gonzales's termination was entered as being discrimination based on national origin. Gonzales signed this form.

The Bexar County Sheriff's Office received notice of the charge on October 1, 1979, alleging discrimination on the basis of national origin. On January 10, 1980, the EEOC requested Bexar County to submit information pursuant to Gonzales's charge of discrimination. On January 20, the EEOC held a "fact-finding conference" at which time it became apparent to the EEOC director that the Bexar County Sheriff's Department was unwilling to conciliate the pending discrimination claims. Nonetheless, the EEOC investigation and, later, the conciliation efforts continued.

On January 1, 1981, the newly elected Joe Neaves replaced Rudy Garza as Sheriff of Bexar County. After learning of this change, Gonzales asked Neaves to reinstate him pursuant to the two grandfather clauses. Neaves refused to reinstate Gonzales, stating, the district court found, that he was too old, and instead offered Gonzales a nonpaying position as a reserve deputy. Gonzales declined this offer, but complied with the preliminary requirements for the position, including being fingerprinted.

On April 7, 1981, the EEOC issued its Letter of Determination (LOD) stating that "there is reasonable cause to believe Respondent's decision to discharge and not reinstate the charging parties was *based upon their national origin and race* in violation of Title VII of the Civil Rights Act of 1964, as amended." (Emphasis added.)[1] The EEOC continued its conciliation efforts, in which Gonzales's age discrimination claim was discussed, during the time the United States Department of Justice reviewed the EEOC's LOD up through February 2, 1982, when the Justice Department issued its notice of Gonzales's right to sue within ninety days.[2]

### B.

On April 30, 1982, Gonzales[3] filed an action in federal court under Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1983 and 6102, and the fifth and fourteenth amendments.[4] Named defendants were Bexar County, the current and former sheriffs of Bexar County, Joe Neaves and Rudy Garza, respectively, the Bexar County commissioners and TCLEOSE (collectively the County). On August 24, 1982, the

---

**1.** Gonzales was one of ten parties complaining of discriminatory conduct by the Bexar County Sheriff's office. The EEOC apparently believed that nine of the complainants, including Gonzales, alleged discrimination on the basis of national origin, even though Gonzales had not checked national origin on EEOC form 283. Similarly, the EEOC erroneously stated that all ten of the complainants submitted falsified GED certificates to the Sheriff of Bexar County to avoid discharge. In fact, only five complainants falsified certificates. *See infra* note 5. The errors concerning the type of discrimination alleged and the actions taken by the complainants were probably the result of the EEOC's decision to consolidate these cases. None-

theless, the district court found as a fact that Gonzales's counsel repeatedly attempted to conciliate and settle Gonzales's age claims.

**2.** During these conciliation efforts, Bexar County settled three of the ten cases. In each of the cases settled, the complainant was younger than Gonzales.

**3.** The six other parties claiming discrimination by Bexar County were also plaintiffs in this action.

**4.** *See* note 6 *infra.*

district court dismissed the suit against TCLEOSE under the eleventh amendment, and on January 18, 1983, granted summary judgment in favor of all the remaining defendants.

Gonzales appealed, and on November 15, 1983, this court held that Gonzales's pleadings and affidavits alleged age discrimination in violation of federal law.[5] Since the County presented no evidence to refute Gonzales's allegation of age discrimination, this court concluded that a genuine issue of material fact existed on this question, rendering summary judgment inappropriate. This court thus vacated the summary judgment against Gonzales and remanded the action to the district court for further proceedings on Gonzales's age discrimination claim.

On March 26, 1984, pursuant to the district court's scheduling order, Gonzales filed a first amended complaint, alleging for the first time that the County discriminated against him on the basis of his age in violation of the ADEA.[6] On July 25, the County filed a motion to dismiss the action, or, in the alternative, a motion for summary judgment on the grounds that Gonzales had never filed an age discrimination charge with the EEOC after he resigned as a Bexar County employee. The district

court denied the County's motion. On August 4, Gonzales filed a second EEOC charge, specifically alleging age discrimination. The district court began proceedings on Gonzales's age discrimination claim on August 6. On August 14, the County filed a motion for leave to amend its original answer to plead defense to Gonzales's ADEA claim contained in his first amended complaint of March 26. The County contended that Gonzales's first amended complaint was the first notice given the County that age discrimination in violation of the ADEA was the basis of Gonzales's claim. Gonzales opposed the County's motion to amend, maintaining that the original complaint alleged age discrimination (although under 42 U.S.C. § 6102, not 29 U.S.C. § 626) so that the County had notice of Gonzales's claim of age discrimination, that the Fifth Circuit found that Gonzales had alleged age discrimination in violation of federal law and remanded the case for further proceedings on that issue alone, and that the County failed to file a timely answer to raise a defense to Gonzales' amended complaint, thus waiving the right to assert a defense. *See* Fed.R.Civ.P. 8 and 10. Furthermore, Gonzales claimed that during the EEOC investigation and conciliation attempts between April 1981 and February 1982, the parties repeatedly dis-

---

5. This court also held that the district court properly granted summary judgment against the other six plaintiffs. Five of the plaintiffs had submitted falsified GED certificates in an effort to satisfy the educational standards. This court thus found that these plaintiffs "were dismissed from their jobs as jail guards not because of their failure to meet the educational standard, or because of any employment discrimination on the part of Bexar County, but because they violated Texas law by submitting forged documents to satisfy the educational standards." We upheld the summary judgment against the sixth plaintiff because the allegations of discrimination did not contend that Bexar County's actions were not taken pursuant to Texas law. In addition, that plaintiff had been reinstated, so a claim of continuing discrimination was precluded. Thus, this court affirmed the summary judgments against all plaintiffs except Gonzales.

6. Gonzales's original complaint alleged violations of 42 U.S.C. § 6102, which states in pertinent part: "[N]o person in the United States shall, on the basis of age, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."

Gonzales's first amended complaint alleged violations of the ADEA, which states in pertinent part:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a).

cussed Gonzales's age discrimination claim, and the County explicitly refused to reinstate Gonzales because of his age. The district court denied the County's motion to amend its answer.

On September 23, 1984, the court announced in open court that Gonzales had met his burden of proof, and that judgment would be entered for Gonzales and against the County. On February 15, 1985, the court filed a memorandum containing its findings of fact and conclusions of law. The court found that Gonzales was entitled to $169,124 in damages, representing $84,562 in actual damages and $84,562 in liquidated damages. On the same date, the court found that Gonzales was entitled to recover attorney's fees in the amount of $148,312.19, and expenses of $6,225.16. The County filed a timely notice of appeal.

## II

The County raises several issues on appeal. First, the County contends that the district court lacked jurisdiction to proceed to trial after remand under the ADEA because Gonzales had not previously alleged an ADEA claim. Second, the County argues that the district court committed reversible error in concluding that Gonzales was an employee under the ADEA. Third, the County contends that the district court abused its discretion in refusing to grant the County leave to file a first amended original answer. The County next contends that the district court erred in finding that Gonzales was constructively discharged from his employment as a detention officer. Finally, the County argues that the district court erred in finding that Gonzales was a victim of willful age discrimination in employment, and was therefore entitled to liquidated damages under the ADEA.[7]

We find that several of these contentions are without merit and thus are summarily dismissed.[8] For this reason, the only issues that we resolve on appeal are whether

7. The County does not challenge the unusually high attorney's fee awarded in this case, even though the award includes a fifty percent increase in the fee actually charged, for which we can see no basis. When deciding the proper amount of attorney's fees, the district court rigorously applied the twelve factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). Despite the fact that we believe the award is clearly excessive, especially in the light of the quality of representation in this case, the County's decision not to appeal the amount of the award leaves us no choice but to let the award stand.

8. First, Gonzales is clearly an employee as that term is used in the ADEA. Although the ADEA does not define who is an employee, the legislative history indicates that exceptions to the term "employee" are to be narrowly construed. In *Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir.1985), this court listed six factors to consider in determining whether a complainant falls into an exception to the term "employee."

While in many cases in may be necessary to carefully review each of the six factors enumerated in *Teneyuca*, we find that Gonzales presents this court with an easy case. Gonzales was one of 500 employees of the Bexar County Sheriff's office, he reported to several supervisors besides the sheriff, and he performed routine tasks at the jail. These facts alone clearly demonstrate that Gonzales does not fall into any of the policy-making or politically appointed position that comprise the exceptions to the term "employee."

The County's second contention that the district court abused its discretion in denying the County leave to amend its original answer is meritless. The decision to grant or deny leave to amend is left to the sound discretion of the district court. *Carter v. Procunier*, 755 F.2d 1126, 1129 (5th Cir.1985). The County did not move for leave to amend until August 14, 1984, less than two weeks before scheduled jury selection and 122 days after Gonzales filed his amended complaint. The district court found, and we agree, that the County did not provide any reasonable excuse for its failure to file a timely motion to amend. Moreover, even if the district court erred in denying the county leave to amend, any error was harmless. The district court did not base its findings of fact on the County's failure to defend Gonzales's ADEA claim.

Finally, the County's contention that the district court erred in finding that Gonzales had been constructively discharged need not be decided by this court. The basis of Gonzales's complaint against the County is that it refused to reinstate him because of his age, not that it caused his working conditions to be so intolerable that he was compelled to resign. Since finding for either County or Gonzales on this issue is not material to the outcome in this case, we do not decide whether Gonzales was constructively discharged.

the district court had improperly proceeded to trial on the ADEA claim, and whether the district court was clearly erroneous in finding that Gonzales was a victim of willful age discrimination and entitled to liquidated damages under the ADEA.

### III

#### A.

The County's primary contention on appeal is that the district court lacked jurisdiction to hear Gonzales's ADEA claim for two reasons. First, the County claims that the only age-related claim which the Fifth Circuit could have remanded was a claim under 42 U.S.C. § 6102, a claim different from the ADEA action on which the district court ultimately based its decision. Second, the County contends that Gonzales's claim under the ADEA was barred by the statute of limitations because Gonzales failed to file a timely charge of age discrimination with the EEOC. The County notes that Gonzales alleged an ADEA claim in his first amended complaint filed on March 26, 1984, five years after this action was instituted. Gonzales did not file an EEOC charge specifically alleging age discrimination until August 4, 1984, approximately one week before trial and long after the expiration of the 180-day time limit for filing such EEOC claims. Thus, the County contends that a claim by Gonzales under the ADEA, which incorporates the two-year statute of limitations contained in the Portal-to-Portal Act, 29 U.S.C. § 255(a), was time-barred.[9] Although we find that the County's contentions on this issue raise very serious questions, after reviewing the district court's findings of fact and the record supporting those determinations, we find that the district court did not err in allowing Gonzales leave to amend his complaint to allege violations of the ADEA by the County and in subsequently rendering a judgment under the ADEA.

First, the County correctly notes that the only claim remanded for further proceedings by this court was Gonzales's age discrimination claim under 42 U.S.C. § 6102. In fact, at the time of this court's first decision in this case, Gonzales had not yet filed an age discrimination claim under the ADEA. This alone, however, does not render the district court's eventual decision under the ADEA erroneous, because the court allowed Gonzales to amend his complaint after remand to include an ADEA claim. Thus, the question presented by the County is whether the district court erred in allowing Gonzales to amend his complaint.

The decision to grant or deny "leave to amend lies within the discretion of the district court, and is subject to reversal only for an abuse of discretion." *Carter v. Procunier*, 755 F.2d 1126, 1129 (5th Cir.1985). Federal Rule of Civil Procedure 15(a) states that after a responsive pleading has been served, a party may amend his pleadings "only by leave of the court ... and leave *shall* be freely given when justice so requires." (Emphasis added.) The Supreme Court has admonished that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 183, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ In the instant case, the evidence shows that the County was fully aware that the sole issue before the district court after remand was whether Gonzales had been the victim of age discrimination. Thus, allowing Gonzales to amend his complaint did not delay the trial by necessitating additional discovery, nor was the County prejudiced by being surprised by unsuspected claims immediately before trial. Under these circumstances, we find that the district court did not abuse its discretion in allowing Gonzales to file his first amended complaint.[10]

---

**9.** The parties agree that the statute of limitations for willful discrimination is three years. *See* 29 U.S.C. § 626(e) and 29 U.S.C. § 255(a).

**10.** In addition, under its March 2, 1984 scheduling order, the district court informed both par-

ties that pleading could be amended "on or before March 26, 1984 unless an extension is granted or good cause shown." The court was merely following its own order when it allowed Gonzales to file his first amended complaint.

Because the ADEA claim was properly allowed as an amendment to Gonzales's complaint, we must consider the County's related contention that Gonzales's ADEA claim was barred by the statute of limitations. Fed.R.Civ.P. 15(c) states: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, *the amendment relates back to the date of the original pleading.*" (Emphasis added.) Noting that the doctrine of relation back under Rule 15(c) is to be "liberally applied," this court has stated that

"As long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint, there will be no bar to amendment; even new defendants and new theories of recovery will be allowed."

*Williams v. United States*, 405 F.2d 234, 236–37 (5th Cir.1968) (citations omitted).

In this case, Gonzales's claim under both 42 U.S.C. § 6201 and the ADEA arise out of the same "conduct, transaction or occurrence": Bexar County's refusal to reinstate Gonzales because of his age. Since the original complaint afforded the County adequate notice of Gonzales's claim, the amended complaint relates back to the filing of the original complaint. Thus Gonzales's ADEA claim was not barred by the statute of limitations.

Our discussion of this issue, however, cannot end here. The County vigorously argues that Gonzales's failure to file a timely EEOC charge specifically alleging age discrimination barred the district court from proceeding under the ADEA. The County states:

The amended ADEA provides that no civil action may be commenced by an individual until 60 days after a charge alleging unlawful discrimination has been filed with the EEOC, and the charge must be filed within 180 days after the occurrence of the alleged unlawful employment practice. A victim of purported age discrimination must, therefore, without exception file a charge with EEOC before filing suit in federal court.

(Citations omitted.)

Claiming that Gonzales failed to comply with these requirements, the County asserts that Gonzales "failed as a matter of law to satisfy the threshold requirement necessary to maintain an action in federal court" under the ADEA.

The issue is not this simple. In *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." [11] Applying this holding, the Court found that female flight attendants who had not previously filed a sex discrimination claim under Title VII of the Civil Rights Act of 1964 with the EEOC were not barred from pursuing their claims in federal court. [12] Sim-

---

**11.** Although *Zipes* was decided under Title VII, and not the ADEA, this court has repeatedly looked to Title VII decisions to interpret the ADEA. *See Thornbrough v. Columbus and Greenville Ry Co.*, 760 F.2d 633, 638 n. 4 (5th Cir.1985); *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 557–58 n. 1 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Moreover, in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 567, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), the Supreme Court instructed that where the source of a section in the ADEA parallels Title VII, the two statutes are to be construed consistently.

**12.** In *Zipes*, the flight attendants who did not file a timely EEOC charge had been members of a class action at the institution of the lawsuit. The class representative, the flight attendant's union, did file an EEOC charge as required under Title VII. The class was subsequently decertified when it was determined that the Union could not adequately represent the interests of all of the members. When the flight attendants attempted to sue in their individual capacities, the Seventh Circuit held that the district court properly granted summary judgment

ilarly, our court has minimized the technical requirements for accurately specifying the type of discrimination alleged. In *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir.1970), this court has held that a complainant who checked only the box next to "sex" on an EEOC charge was not barred from amending her charge after the time for filing had passed to allege discrimination on the basis of "national origin." In explaining this result, we noted that

> We must ever be mindful that the provision of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated. It cannot be doubted that "a large number of the charges filed with [the] EEOC are filed by ordinary people unschooled in the technicalities of the law." This fact can only point us in the direction of liberal procedural rules.

*Id.* at 463 (citation omitted).

■ We agree with the County that Gonzales's formal EEOC charge filed in September 1979 did not specify age discrimination, and thus should not be seen as satisfying the technical requirements of the ADEA. Similarly, Gonzales's second EEOC charge, specifically alleging age discrimination, was untimely and thus of no effect. Nonetheless, Gonzales did file two EEOC charges; nothing in this opinion should be construed as supporting the position that failure to file any EEOC charge can be waived. Thus, the limited question before this court is whether there are equitable grounds sufficient for excusing Gonzales's failure to comply with the technical filing requirements in this case.

■ After reviewing the district court's findings of facts, we find that Gonzales should not be barred from pursuing his ADEA claim. The district court, which was able to judge the credibility of the witnesses testifying before it, found that Gonzales had informed the EEOC intake officer that he had been refused reinstatement because of his age. We cannot find this determination to be clearly erroneous. Gonzales's act of checking the box marked "other" instead of the box marked "national origin" lends support to the district court's determination. In addition, Gonzales had only a second-grade education, and it was reasonable for him to rely on the EEOC intake officer to properly complete the EEOC charge. Gonzales is precisely the kind of "unlettered and unsophisticated" person that the liberal provisions of the ADEA are designed to protect. Finally, the County was made aware that discrimination on the basis of age was an issue in this case. Sheriff Garza testified at trial that he spoke with an EEOC investigator about Gonzales's age discrimination claim. Similarly, in the summer of 1981, County Judge Bustamante, who testified at trial that he had assisted the County in this case during conciliation efforts, discussed Gonzales's age discrimination claim with Gonzales's counsel. Moreover, the County acknowledged at trial that during 1981 Gonzales's counsel had sent it several letters discussing Gonzales's age discrimination claims. Thus, despite the EEOC's failure to correctly complete Gonzales's EEOC charge, it is clear that the County had actual notice of Gonzales's age discrimination claim which was the subject of discussion during EEOC investigation and conciliation attempts. This is a finding of fact of the district court that is not clearly erroneous. Under these circumstances, where the County was apprised of the charges

---

against them because each flight attendant had not filed a timely charge with the EEOC. The Supreme Court reversed, in part because the Union's timely EEOC filing could be attributed to each member of the class.

The facts in the instant case are different. Here, Gonzales filed a timely EEOC charge, but because of the EEOC intake officer's failure to complete the charge correctly, Gonzales did not specifically allege age discrimination. Thus, while the individual flight attendants did not file *any* EEOC charge, Gonzales did. For this reason, the equities of the instant case are at least as compelling as those before the Supreme Court in *Zipes*.

against it and had an opportunity to resolve those charges, equity requires that Gonzales should not be penalized for the EEOC's failure to note correctly on the formal charge the type of discrimination to which Gonzales had been subjected.[13] *Deyo v. City of Deer Park*, 664 F.2d 518, 522 (5th Cir.1981) (complainants should not bear burden of EEOC's failure to heed statutory objective). As this court has often found that procedural errors or inartful charges by the complaining party should not bar Title VII or ADEA actions,[14] we can certainly find no basis for allowing an error by a third party, the EEOC, to have this effect.

Because the EEOC failed to properly complete Gonzales's charge, and because the County had actual notice of Gonzales's age discrimination claim, the equities in this case justify excusing Gonzales from not complying with the precise filing requirements of the ADEA.

### B.

The final issue that we consider is the County's contention that the district court erred in finding that Gonzales was the victim of willful age discrimination in employment, and was thus entitled to liquidated damages. The County urges us to "review the entire trial testimony and all exhibits in order to ascertain the inaccuracy of the District Court's contentions." The County also invites us to adopt alternative findings of fact and conclusions of law that would reverse the decisions made by the district court. We find that the district court was not clearly erroneous in finding that Gonzales was the victim of willful age discrimination in employment, and have no authority to adopt alternative findings of fact.

**13.** We again note that Gonzales did file a timely EEOC charge, even though that charge failed to allege each type of discrimination he had suffered. Thus, in view of the equitable considerations presented in this case, Gonzales satisfied the condition precedent of filing a timely charge of discrimination with the EEOC.

**14.** *See, e.g., Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 75 (5th Cir.1982); *EEOC v.*

Section 7(b) of the ADEA provides that a prevailing plaintiff under the ADEA is entitled to liquidated damages "only in cases of willful violations." 29 U.S.C. § 626(b). A violation of the ADEA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985). In *Anderson*, 105 S.Ct. at 1511–12, the Supreme Court stated that a finding of intentional discrimination is a finding of fact that is subject to review under the "clearly erroneous" standard. Applying this standard of review, we cannot find that the district court's conclusion that Gonzales was the victim of willful age discrimination was clearly erroneous especially where testimony revealed that age was the explicit reason for the decision not to reinstate Gonzales.[15]

### IV

Our holding today should not be construed as minimizing the importance of the ADEA requirements for filing a charge with the EEOC and for attempting to conciliate the parties' differences. Nonetheless, when a district court has explicitly found that a claimant informed the EEOC of the nature of his charges against his employer, and the EEOC failed to properly complete the EEOC charge forms, and the employer was fully apprised of the claims pending against it, and the parties had discussed these claims and had an opportunity to resolve the claims before litigation, the fact that the formal EEOC charge form did not correctly state the exact basis of the discrimination should not preclude a court from granting relief where appropriate.

*Mississippi College*, 626 F.2d 477, 483 (5th Cir. 1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981); *Sanchez*, 431 F.2d at 462.

**15.** Credited testimony demonstrated that both Sheriff Garza and Sheriff Neaves stated that the reason Gonzales was not reinstated was because of his age.

Applying this equitable principle to the instant case, we find that the district court properly concluded that Gonzales's claim was not barred by the procedural requirements of the ADEA. Thus, the judgment of the district court is

AFFIRMED.