CUT 'N DRIED SALON *et al.*, Petitioners-Appellants, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—98—1660

Opinion filed June 10, 1999.

Roger A. Leishman, Harvey M. Grossman, and Lauren Raphel, all of Chicago, for petitioners.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for respondents Human Rights Commission and Department of Human Rights.

Stephen D. Erf and D. Scott Watson, both of McDermott, Will & Emery, of Chicago, for respondents National Group Life Insurance Company, American Small Business Association, Larry J. Doze, Steven Loving, and Richard Allen.

PRESIDING JUSTICE SOUTH delivered the opinion of the court: Petitioners, Cut 'N Dried Salon, Jeff Bellerive and Beth Ann Brewer, seek direct review of an order of the Illinois Human Rights

Commission (Commission). The Illinois Department of Human Rights (Department) dismissed petitioners' charge of discrimination against respondent National Group Life Insurance Company and its employees, for lack of subject matter jurisdiction, and the Commission affirmed the decision. Specifically, the Commission concluded that the denial of the application for insurance coverage was not equivalent to the denial of the services of a place of public accommodation under the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1992)) and, therefore, the Department and Commission lacked subject matter jurisdiction over the charge.

Complainant Jeff Bellerive owns and manages Cut 'N Dried hair salon. Complainant Beth Ann Brewer is a hairdresser employed by the salon. (Complainants are collectively referred to as Cut 'N Dried.) Respondent National Group Life Insurance Company (National) is an insurance company doing business in Illinois. Respondents Larry Doze, Steven Loving and Richard Allen are all agents of National. National offers its insurance to businesses through respondent American Small Business Association.

In 1991, Jeff Bellerive submitted an application to National for health insurance coverage on behalf of his employee, Beth Ann Brewer. Petitioners allege that, two days later, Allen informed them that National would not provide insurance for Brewer because "it does not insure employees of hairdressers, interior decorators, florists, graphic designers and a host of other professions." In October, Bellerive contacted Loving of National who explained that they could not insure "high risk occupations" but would insure the owners, managers or partners of such businesses.

In November of 1991, Bellerive obtained group health insurance for Brewer through another carrier at a higher premium than National's. Later that month, Larry Doze, senior vice-president and chief actuary of National Group Life, wrote Bellerive to inform him that National's policy had changed and the company would consider insuring hairdressers at a 20% increase (rate-up) in the premium.

On September 23, 1992, petitioners filed a charge of discrimination with the Department alleging that respondents discriminated against them based upon sex, marital status and perceived handicap by refusing to insure Beth Ann Brewer and subsequently offering to insure her at a 20% rate-up.

On October 8, 1997, the Department dismissed the charge for lack of jurisdiction. The Department, relying on a Human Rights Commission decision, *Klein v. John Alden Life Insurance Co.*, Ill. Hum. Rts. Comm'n Rep. 1983CP0171 (March 5, 1984), declined jurisdiction because there were no allegations that respondents' actions were not based on actuarial principles or reasonably anticipated experiences.

Petitioners filed a request to review the Department's dismissal with the Commission on November 12, 1997. The Commission affirmed the dismissal, also concluding that, according to *Klein*, it did not have jurisdiction over allegations or discrimination regarding the underwriting of insurance policies because insurance is not a place of public accommodation under section 5—101(A) of the Illinois Human Rights Act (775 ILCS 5/5—101(A) (West 1992)).

The issue is whether an insurance company falls under the purview of the Human Rights Act as a public accommodation.

■ The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature. *People ex rel. Baker v. Cowlin*, 154 Ill. 2d 193, 607 N.E.2d 1251 (1992). The most reliable indicator of legislative intent is the language of the statute and any inquiry should begin with that language. *People v. Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797 (1994). Where statutory language is clear, it will be given effect without relying on other aids for construction. Where the language is ambiguous, however, it is appropriate to consider the legislative history. *Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797. In reviewing decisions of the Human Rights Commission, the appellate court is not bound by the Commission's legal conclusions, but must review questions *de novo. Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 261, 664 N.E.2d 61, 75 (1996). Because the construction of a statute is a question of law, the standard of review on this issue is *de novo. Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997).

■ The Human Rights Act provides:

"It is a civil rights violation for any person on the basis of unlawful discrimination to:

(A) *** Deny or refuse to another the full and equal enjoyment of the facilities and services of any public place of accommodation." 775 ILCS 5/5—102(A) (West 1992).

The Act's definition of "place of public accommodation," in its entirety, is as follows:

"(1) 'Place of public accommodation' means a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public.

(2) By way of example, but not of limitation, 'place of public accommodation' includes facilities of the following types: inns, restaurants, eating houses, hotels, soda fountains, soft drink parlors, taverns, roadhouses, barber shops, department stores, clothing stores, hat stores, shoe stores, bathrooms, restrooms, theaters, skating rinks, public golf courses, public golf driving

ranges, concerts, cafes, bicycle rinks, elevators, ice cream parlors or rooms, railroads, omnibuses, busses, stages, airplanes, street cars, boats, funeral hearses, crematories, cemeteries, and public conveyances on land, water, or air, public swimming pools and other places of public accommodation and amusement." 775 ILCS 5/5— 101(A)(1), (A)(2) (West 1992).

Petitioners argue that an insurance company falls under the plain language and broad definition of "place of public accommodation" found in subsection (A)(1) of the Human Rights Act (775 ILCS 5/5— 101(A)(1) (West 1992)). Specifically, petitioners contend that an insurance company is a business and, therefore, a "business facility, the services of which are made available to the public" in accordance with the Act. Respondents contend that the plain language of the statute does not support the conclusion that an insurance company is a place of public accommodation. An insurance company is not specifically enumerated as a "place of public accommodation" under the Act; therefore, the court must determine whether an insurance company falls within the broad statutory definition of that term.

■ Recently in *Baksh v. Human Rights Comm'n*, 304 Ill. App. 3d 995 (1999), the appellate court determined that where the entity accused of discrimination as a place of public accommodation under the Act is not specifically enumerated, a determination must be made whether it falls into the broad definition of that term by focusing on the language of the statute itself. *Baksh*, 304 Ill. App. 3d at 1003. In *Baksh*, the Human Rights Commission found that the petitioner, a dentist, committed a discriminatory act by refusing to treat an HIV-positive patient. Petitioner appealed the decision, arguing that a dental office is not a place of public accommodation under the Human Rights Act. *Baksh*, 304 Ill. App. 3d at 1003. The court applied the doctrine of *ejusdem generis*, which provides: " '[W]hen a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those "others such like" the named persons or things.' " *Baksh*, 304 Ill. App. 3d at 1004, quoting *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 211 (1994).

In applying the doctrine, the focus should be on the nature of the activity itself and whether the activity is similar to the activities enumerated in the statute. *Baksh*, 304 Ill. App. 3d at 1004. The court found that dental services were unlike the services offered at the places of public accommodation contemplated under the Act. *Baksh*, 304 Ill. App. 3d at 1006.

■ There is no question that an insurance company is a business. However, unlike the businesses enumerated in subparagraph 2, which

provide services to everyone without prescreening, an insurance company provides a service, specifically, insurance coverage, only after analyzing a particular applicant and setting a premium based upon particular characteristics of the person. An applicant does not have a choice in the premium given, and it is allowable for insurance companies to discriminate on the basis of certain actuarial principles in the industry. The nature of insurance coverage is not to provide general goods and services but to undertake a risk on a prescreened applicant in exchange for a premium based upon that applicant's characteristics. This distinguishes insurance companies from the enumerated establishments that provide overnight accommodations, entertainment, recreation or transportation where one individual is no different than the next.

Based upon the supreme court's directive to employ the doctrine of *ejusdem generis* in interpreting this section of the Human Rights Act, an insurance company does not constitute a "place of public accommodation."

Alternatively, the legislative history surrounding the Human Rights Act is illustrative in determining whether the legislature intended insurance companies to be places of public accommodation. In *Klein v. John Alden Life Insurance Co.*, Ill. Hum. Rts. Comm'n Rep. 1983CP0171 (March 5, 1984), the Commission held that it did not have jurisdiction over discrimination claims based on insurance underwriting. To date, this decision has been supported by the legislature's failure to enact legislation to the contrary. The 86th, 87th and 88th General Assembly sessions had bills introduced that would have added an article 3A to the Human Rights Act which specifically addressed discrimination in insurance coverage. See 88th Ill. Gen. Assem., House Bill 0511, 1993 Sess.; 87th Ill. Gen. Assem., Senate Bill 470, 1991 Sess.; 87th Ill. Gen. Assem., House Bill 529, 1991 Sess.; 86th Ill. Gen. Assem., House Bill 254, 1989 Sess. In all four sessions the bill died at the close of the term. The deliberate attempts to enact legislation to include insurance companies in the Human Rights Act serves to underscore their current absence from the existing framework. Thus, it is also clear from the legislative history that insurance companies are not "places of public accommodation" as contemplated under the Human Rights Act.

The Human Rights Act does not provide for safeguards against discrimination by insurance companies under its public accommodation provisions. However, the Illinois Insurance Code specifically provides protection against discrimination. 215 ILCS 5/364 (West 1996). Filing a complaint with the Department of Insurance should have been petitioners' manner of redress.

148

Based upon the foregoing analysis, the judgment of the Human Rights Commission is affirmed.

Affirmed.

HOFFMAN and HALL, JJ., concur.