MARY K. WALLACE, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (4th Division)    Nos. 1—92—2619, 1—92—3907 cons.

Opinion filed April 7, 1994.

Thomas W. Duda, of Buffalo Grove, for petitioner.

William M. Walsh and Monica O. Haenselman, both of Sonnenschein, Nath & Rosenthal, of Chicago, for respondent American Air Filter.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of counsel), for respondent Human Rights Commission.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This case began when Mary Wallace filed a charge of discrimina-

tion against her employer under the Illinois Human Rights Act (the Act) (Ill. Rev. Stat. 1989, ch. 68, par. 1—101 *et seq.*). The Act allows an employee to file such a charge with the Illinois Department of Human Rights (the Department). (Ill. Rev. Stat. 1989, ch. 68, par. 2—102(A).) The Department then must investigate to determine if substantial evidence supports the charge. If the Department so finds, it files a complaint with the Illinois Human Rights Commission (the Commission). If the Department finds insufficient evidence, it dismisses the charge; the employee may then file a request for review with the Commission. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(D)(2).) If the Department fails to make a finding within 300 days after a charge is filed, a 30-day window of opportunity is opened by the statute to allow the employee to file a complaint on her own. Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(2).

We consolidate two appeals brought by Wallace. She first appeals the order of the Commission dismissing her discrimination complaint as untimely. The Commission dismissed Wallace's complaint filed on the 322nd day because the Department acted to dismiss her charge on the 316th day. Wallace argues that the Commission erred because: (1) the Department is precluded from acting during the 30-day window period when the employee may act on her own; (2) the Commission did not honor a stipulation between her and her employer to vacate the Department's dismissal and confer jurisdiction on the Commission; and (3) the Commission did not follow proper procedures.

Wallace separately appeals the Commission's decision to affirm the Department's finding that her charge lacked sufficient evidence.

We affirm both decisions by the Commission.

Wallace worked for American Air Filter as an assembler. This work required her to assemble filters, carry buckets of glue weighing 40 pounds, and use a hand stapler. In April 1989 Wallace sought medical care for cervical radiculopathy, a condition of the neck and upper extremities. She was treated by a doctor and excused from work. She returned to work on October 23, 1989. The doctor's restrictions were: "Not to lift more than 10-15 lbs. No excessive pulling and pushing."

To accommodate these restrictions American Air Filter did not require her to carry buckets of glue or push heavy carts. It transferred her from the special assembly line to a regular line where she had to carry die-cast boxes weighing less than two pounds each. Her production quota was 500 filters per day. When Wallace complained she could not meet the quota, her supervisor asked for

medical documentation to verify that her medical condition prevented her from meeting the production requirements. Wallace did not do so. American Air Filter terminated Wallace in June 1990 because she failed to meet the quota. She was 44 years old.

On October 11, 1990, Wallace filed a charge of discrimination with the Department under section 2—102(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1989, ch. 68, par. 2—102(A)). She alleged American Air Filter did not accommodate her medical condition and discharged her because of her age and physical handicap. Wallace claimed American Air Filter had accommodated other, younger employees by assigning them to work in a warehouse where they did not have to meet quotas.

The Department dismissed the charge 316 days after Wallace filed it, on August 23, 1991. The Department concluded that Wallace's claims of handicap and age discrimination were not supported by substantial evidence. The Department found that American Air Filter reasonably accommodated Wallace when it modified her job duties on a regular line position to comply with her medical restrictions. The Department further found that Wallace knew she had a quota of 500 filters per day, but failed to meet it, and that she did not give American Air Filter medical documentation to support her claim that her medical condition prevented her from meeting the quota. The Department also found that, although younger employees were given positions not offered to Wallace, those employees did not perform at her "subpar" level.

On August 29, 1991, six days after the Department dismissed the charge, Wallace filed a complaint directly with the Commission. She repeated the allegations contained in her discrimination charge. Wallace and American Air Filter then filed a joint motion before the Commission to vacate the dismissal of the charge by the Department and asking the Commission to assume jurisdiction of the complaint. The Commission denied the motion and dismissed Wallace's complaint with prejudice finding that the underlying charge of discrimination had already been dismissed.

Wallace also filed a petition for review with the Commission of the Department's decision under section 7A—102(D)(2)(a) of the Act. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(D)(2)(a).) The Commission affirmed the Department's dismissal of the charge. It found that the evidence established a legitimate nondiscriminatory reason for her discharge based on failure to meet production requirements. It further found that American Air Filter reasonably accommodated Wallace's physical handicap and did not discharge her because of her age.

Wallace first argues that the Commission erred when it dismissed her complaint for lack of jurisdiction. She claims the Department was precluded from dismissing the underlying charge after the 300-day period had expired and during the 30-day period she was allowed to file a complaint on her own behalf.

■ The Act provides that, within 300 days after a charge has been properly filed, the Department "shall either issue and file a complaint *** or shall order that no complaint be issued." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(1).) The Act further provides that, within 30 days after the 300-day period expires, the employee may file a complaint with the Commission if the Department has not already filed a complaint or dismissed the charge. The employee must notify and "serve a copy of the complaint on the Department ***. Upon such notice, the Department shall cease processing the charge." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(2).) The Act also provides that "[u]nless and until the aggrieved party files a complaint with the Human Rights Commission ***, the Department shall continue its investigation and conclude it with the greatest promptness that is administratively feasible." Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(3).

Two appellate decisions address the power of the Department to issue a complaint or dismiss a charge once the 300-day period has passed: *On-Line Financial Services, Inc. v. Department of Human Rights* (1992), 228 Ill. App. 3d 99, 592 N.E.2d 509, and *Wildwood Industries v. Illinois Human Rights Comm'n* (1991), 220 Ill. App. 3d 12, 580 N.E.2d 172. In *Wildwood,* the Department filed complaints with the Commission two years after the party filed charges with the Department. The court upheld the Department's jurisdiction to file the complaints and found that the 300-day filing period of section 7A—102(G)(1) was not mandatory. (*Wildwood,* 220 Ill. App. 3d at 22, 580 N.E.2d at 177.) In *On-Line,* the Department began its investigation three years after the party filed a charge. The court held that the "Department retains jurisdiction over the matter following expiration of the initial 300-day period." *On-Line,* 228 Ill. App. 3d at 104, 592 N.E.2d at 512.

■ The Department not only retains jurisdiction past the 300-day filing period, the Act also *requires* it to continue the investigation "unless and until" the aggrieved party files a complaint within the 30-day window provided for in section 7A—102(G)(2). (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(3).) Under section 7A—102(G)(2), an employee may file a complaint within the 30-day window if the Department has not already filed a complaint or dismissed the charge. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(G)(2).) Here, Wal-

lace filed a complaint after the Department dismissed the charge. The Department acted with jurisdiction and pursuant to section 7A—102(G)(3). The Commission properly ruled that Wallace lost the right to file a complaint once the Department dismissed her charge. Wallace argues that this result creates the possibility of a "race" to the Commission in the 30-day period between the Department and an employee. But there is no other way to read the plain language of section 7A—102(G)(2).

■ Wallace next argues that the Commission erred when it denied the joint motion to assume jurisdiction of Wallace's complaint and to vacate the dismissal of the charge by the Department.

The Commission concluded it lacked jurisdiction to rule on Wallace's complaint because Wallace "lost her right to file her own complaint" when the Department issued the notice of dismissal during the 30-day window period, six days before Wallace filed her complaint. We agree. Parties cannot create subject matter jurisdiction by consent. (*Swope v. Northern Illinois Gas Co.* (1991), 221 Ill. App. 3d 241, 243, 581 N.E.2d 819.) Although Wallace and American Air Filter stipulated that the Commission should assume jurisdiction of Wallace's complaint, their stipulation could not invest the Commission with jurisdiction. Once the Department dismissed Wallace's charge, her exclusive remedy was review of the Department's decision. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(D)(2)(a).) Under the Act, the Commission's jurisdiction was limited to hear and determine the request for review of the Department's decision. Ill. Rev. Stat. 1989, ch. 68, par. 8—103.

■ Wallace argues for the first time on appeal that the Commission should have vacated the Department's dismissal because the Department did not issue a notice of default when American Air Filter failed to file a timely verified response to Wallace's charge. Section 7A—102(B) of the Act requires a respondent to file a verified response to each allegation of a charge within 210 days after the charge is filed. The Act further requires the Department to issue a notice of default for failure to file a response, "unless the respondent can demonstrate good cause as to why such notice should not issue." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(B).) Wallace admits this requirement is mandatory, not jurisdictional. As the argument was not raised by Wallace before the Department or the Commission, it is waived. (*Hanson v. Illinois Liquor Control Comm'n* (1990), 201 Ill. App. 3d 974, 980, 559 N.E.2d 1092.) We do not consider Wallace's contention that the Commission erred when it allowed American Air Filter to file a response to her request for review for the same reason. It was not raised below.

■ Wallace argues, in the alternative, that the Commission's finding that her charge lacked sufficient evidence was against the manifest weight of the evidence. She relies on a letter written by her doctor which stated that Wallace "will be unable to do repeated use of the right arm and neck at this point in time." Wallace argues that this letter shows that American Air Filter assigned her to a job it knew she could not do.

An agency's finding will not be reversed unless it is against the manifest weight of the evidence. *Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 503 N.E.2d 343.

Wallace's doctor wrote the letter in July 1989 during his treatment of Wallace, four months before he released her to return to work. Although he stated Wallace "will be unable to do repeated use of the right arm and neck," he also said "at this time." When Wallace returned to work in October 1989, the doctor notified American Air Filter that she was not to lift more than 10 pounds or push or pull excessive weights. The record reveals that American Air Filter reasonably modified Wallace's work requirements to accommodate these restrictions. It transferred her from the special line to the regular line where each die-cast box weighed two pounds. It did not require her to lift glue buckets or push heavy carts. When Wallace complained she could not meet the quota, her supervisor asked her to furnish documentation to confirm that her medical condition prevented her from meeting the quota. Wallace failed to do so.

■ Wallace finally argues that American Air Filter accommodated five younger employees by assigning them to positions in the warehouse without a production quota. American Air Filter explained that these employees were assigned there because they applied for jobs for which they were qualified. But Wallace never applied for an open position in the warehouse for which she was qualified.

The Commission's decision is not against the manifest weight of the evidence.

Affirmed.

HOFFMAN and THEIS, JJ., concur.